# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CASE NO. 07-cr-40042-JPG ) |
| ERICH KARL UMGELDER, | ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant Erich Karl Umgelder's ("Umgelder") amended motion to suppress (Doc. 24). The government has responded to the motion (Doc. 28), and Umgelder has replied to that response (Doc. 29). The Court held a hearing on the motion beginning on October 25, 2007, and concluding on November 19, 2007. At that hearing, Federal Bureau of Investigations Special Agent Jon Ford, Illinois State Police Special Agent Breton O'Neill and Southern Illinois University Police Detective David Stewart testified for the government in its case-in-chief. Defendant Umgelder testified on his own behalf. Carbondale Police Officers Erik Ruhe and Adam Boyd, Carbondale Police Detective Brooke Hammel, and Special Agent Ford testified in the government's rebuttal case.

Umgelder is charged in this case with one count of distributing child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) and one count of possessing child pornography in violation of 18 U.S.C. § 2252A(a)(2)(B). His pending amended motion to suppress (Doc. 24) seeks to exclude oral and written statements he made to law enforcement agents and physical evidence (including his computer) seized from his apartment on or around April 19, 2007, as well as any "fruit of the poisonous tree." On April 19, 2007, law enforcement officers entered Umgelder's apartment, which he shared with Timothy McSwain, to execute a search warrant.

The search warrant authorized law enforcement officers to search the apartment for and seize, among other things:

> All visual depictions, including still images, videos, films or other recordings of child pornography or minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, and any mechanism used for the receipt or storage of the same, including, but not limited to, *any computer*, computer system and related peripherals . . . .

(emphasis added). Pursuant to the warrant, the officers seized Umgelder's computer. Child pornography was later found on the computer.

While the search was going on, Special Agent Ford and Detective Hammel questioned Umgelder in his bedroom. In response to their questions, he gave an oral statement and then a written statement, both of which contained incriminating statements. The questioning lasted for approximately two hours. The written statement was approximately one and a half pages long and took about an hour for Umgelder to write. Umgelder also marked a list of his computer files with "CP" to indicate child pornography. No law enforcement officer read Umgelder his *Miranda* warnings before he gave his statements or marked the file list. The law enforcement officers left Umgelder's apartment without formally arresting him, although they arrested him later that day.

Umgelder argues that his statements should be suppressed because he was not given his *Miranda* rights prior to his questioning by Special Agent Ford and Detective Hammel and that, as a consequence, the government's use of those statements at trial would violate his Fifth Amendment right not to incriminate himself. He also challenges whether the search warrant was sufficiently specific to be reasonable under the Fourth Amendment and whether the search warrant was supported by probable cause.

**I.      Fifth Amendment: Self-incriminating Statements**

The Fifth Amendment provides that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Miranda v. Arizona*, 384 U.S. 436, 460-61 (1966), the Supreme Court determined that the rule against self-incrimination attaches, and is "fully applicable during a period of custodial interrogation." The Supreme Court requires police to comply with certain "prophylactic" procedures before questioning an individual in custody. "[T]hey must fully apprise the suspect of the State's intention to use his statements to secure a conviction, and must inform him of his rights to remain silent and to 'have counsel present . . . if [he] so desires.'" *Moran v. Burbine*, 475 U.S. 412, 420 (1986) (quoting *Miranda* at 468-70); *accord Dickerson v. United States*, 530 U.S. 428, 435 (2000). The *Miranda* requirements are constitutional, not simply an exercise of the Supreme Court's supervisory authority to regulate evidence. *Dickerson*, 530 U.S. at 438, 444.

Statements gathered from a suspect in custody without giving *Miranda* warnings carry an irrebuttable presumption of involuntariness and are inadmissible in the prosecution's case in chief, even if seemingly voluntarily made by other standards. *Oregon v. Elstad*, 470 U.S. 298, 306 (1985). If a suspect unambiguously invokes his rights under *Miranda*, he is not subject to further interrogation until counsel is present or until he initiates further discussions. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). However, if a suspect waives his right to counsel after receiving the *Miranda* warnings, law enforcement officers are free to question him. *North Carolina v. Butler*, 441 U.S. 369, 372-376 (1979).

An individual is "in custody" for *Miranda* purposes when "there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *California v.*

3

*Beheler*, 463 U.S. 1121, 1125 (1983) (*per curiam*); *accord Oregon v. Mathiason*, 429 U.S. 492, 494 (1977) (*per curiam*). The determination requires an objective, two-part inquiry: "[F]irst, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995) (internal quotations omitted), *cited in Yarborough v. Alvarado*, 541 U.S. 652, 124 S. Ct. 2140, 2149 (2004). "[T]he test is not whether the defendant was under a subjective belief that his or her movements were restricted, but whether a reasonable person in the defendant's position would believe that he or she was free to leave." *United States v. Lennick*, 917 F.2d 974, 977 (7th Cir. 1990).

To determine whether a defendant was in custody, the Court considers the totality of the circumstances, including "the length of the interrogation, the purpose of the questioning, and the location of the interrogation," *id.*, as well as "whether the encounter occurred in a public place; whether the suspect consented to speak with the officers; whether the officers informed the individual that he was not under arrest and was free to leave; whether the individual was moved to another area; whether there was a threatening presence of several officers and a display of weapons or physical force; and whether the officers' tone of voice was such that their requests were likely to be obeyed," *United States v. Thompson*, 496 F.3d 807, 810-11 (7th Cir. 2007). The defendant carries the burden of making an initial showing of custody. *See Lennick*, 917 F.2d at 977.[1]

In this case, Umgelder argues that he was "in custody" in his bedroom when law

---

[1] Even if the government carried the burden of showing the defendant was not in custody, the Court's conclusion would still be the same in light of the overwhelming credible evidence against a finding of custody.

enforcement questioned him and therefore should have been given *Miranda* warnings before that questioning. He testified that law enforcement officers entered his room on the morning of April 19, 2007, with guns drawn and that Special Agent Ford's gun was clearly visible during his questioning of Umgelder. He also testified that he was surprised, upset and confused by the questioning and that Special Agent Ford did not advise him that he was free to leave or to refuse to answer any questions, effectively blocked his way to the door, and behaved in a threatening, aggressive manner. He further testified that Special Agent Ford dictated his confession to him, and he wrote it down word for word as it was dictated because Special Agent Ford compelled him to.

Other witnesses' testimony was diametrically opposed to Umgelder's in most material respects. For example, the law enforcement officers who entered Umgelder's room testified that they did not have their guns drawn, and Special Agent Ford testified that his gun was tucked beneath his clothing so that Umgelder could not have seen it from the outside. Special Agent Ford and Detective Hammel testified that, although Umgelder was upset, he was told he was free to leave, that no one was blocking Umgelder's path to leave his room, that the questioning was not aggressive or threatening, and that no one dictated Umgelder's written statement to him or forced him to write it, although Special Agent Ford did prompt him by suggesting areas of his existing writings on which he could elaborate. The testimony of law enforcement officers, which contradicts Umgelder's testimony, is bolstered by Umgelder's acknowledgment in his written statement that he was giving the statement "knowingly, intentionally, and voluntarily . . . without any threats, promises, or coercion of any kind being made to [him]," that he was not under arrest and was free to leave at any time, and that the statement was "entirely true."

5

The Court finds Umgelder's testimony not credible in light of the overwhelming testimony to the contrary. Although he appeared to be an intelligent witness in a position to observe the events about which he testified, the Court is well aware of the self-interest he had in suppressing his incriminating statements. More importantly, however, were his demeanor while testifying and the unreasonableness of his testimony in light of the overwhelming contradictory evidence at the hearing. The numerous law enforcement witnesses had a more credible demeanor and gave more consistent and reasonable testimony. Furthermore, Umgelder's own acknowledgments in his written statement contradict his testimony.

Having found the law enforcement witnesses credible and Umgelder not credible, the Court must conclude that the circumstances surrounding the interview were such that a reasonable person in Umgelder's position would have felt free to terminate the interview and leave the apartment. While the total time of contact between Umgelder and law enforcement officers was about three hours, that length of time alone does not suggest custody. *See Beckwith v. United States*, 425 U.S. 341, 347-48 (1976) (three-hour interview in suspect's home did not amount to custody). Furthermore, while it is true that the purpose of the questioning was to determine who was responsible for criminal activity suspected to have occurred at Umgelder's residence, the location of the interview and the manner in which it was conducted were not such that a reasonable person would have felt his movement significantly restricted. The interview was on Umgelder's home turf – his bedroom – which had none of the indicia of coercion that are present in a police station interview. Furthermore, although two law enforcement officers were within a few feet of him, the proximity was necessitated by the small size of the room. The law enforcement officers did not brandish their guns in front of Umgelder, place him in physical

restraints or display any other physical force, and Umgelder could not even see Special Agent Ford's gun. He was also told that he was not under arrest and that he was free to leave or to stop answering questions at any time, and no one blocked his way to the exit. Instead, Umgelder consented to speak to Special Agent Ford and Detective Hammel, who conducted the interview in a non-aggressive, non-threatening manner. That Umgelder might have wanted to stay in his own residence while it was being searched does not negate the fact that a reasonable person in his position would have believed he could have left if he had wanted to. That Umgelder himself actually may not have felt free to leave is irrelevant.

To the extent Umgelder argues that, even though he was not entitled to *Miranda* warnings, his confession should be suppressed because it was not voluntary, the Court rejects that argument. With respect to this argument, the government has the burden of demonstrating by a preponderance of the evidence that Umgelder's statements were not "secured through psychological or physical intimidation but rather [were] the 'product of a rational intellect and free will.'" *United States v. Haddon*, 927 F.2d 942, 945 (7th Cir. 1991) (quoting *United States v. Holleman*, 575 F.2d 139, 142 (7th Cir. 1978)). The totality of the circumstances in this case reveal no facts suggesting that law enforcement "coercion or overreaching overbore the accused's will and caused the confession[,] . . . . a necessary predicate to a finding of involuntariness." *Conner v. McBride*, 375 F.3d 643, 651 (7th Cir. 2004). Although Umgelder was confused and upset, law enforcement officers did not overreach or coerce him into making any statement. Instead, the facts show that Umgelder's statements were "the product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will." *Id.*

In sum, considering the totality of the circumstances, the Court finds that Umgelder was not in custody such that he required *Miranda* warnings before interrogation and that his oral and written statements were voluntary. They are therefore not subject to suppression.

## II.     Fourth Amendment:  Reasonableness of Warrant

The Fourth Amendment prohibits general warrants; a search warrant must particularly describe the objects to be seized in the search, leaving nothing to the discretion of the officers executing the warrant. *Andresen v. Maryland*, 427 U.S. 463, 479-80 (1976); *see Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971); *Stanford v. Texas*, 379 U.S. 476, 480-85 (1965). It does not, however, have to contain elaborate details. It need only enable the officers executing the warrant to "identify the things to be seized with reasonable certainty" by containing descriptions "as particular as circumstances permit." *United States v. Jones*, 54 F.3d 1285, 1290 (7th Cir. 1995). A warrant meets the particularity requirement if "an executing officer reading the description in the warrant would reasonably know what items are to be seized. . . . If detailed particularity is impossible, generic language is permissible if it particularizes the types of items to be seized." *United States v. Hall*, 142 F.3d 988, 996 (7th Cir. 1998). Where law enforcement officers are seeking evidence of illegal child pornography, it is sufficient that the warrant specify that the items to be seized, such as computer files, related to child pornography. *Hall*, 142 F.3d at 996-97.

In this case, Umgelder argues that since the affidavit in support of the warrant focused on Umgelder's roommate Timothy McSwain and that since the warrant did not identify Umgelder's computer specifically, the warrant did not justify a search of his computer. This is simply not true as a matter of law. The warrant authorized a search of the entire apartment for evidence of

8

child pornography crimes, including the search and seizure of computers in the apartment; it clearly covered *any* computer in the apartment, and was not too general simply because it did not specifically authorize a search of Umgelder's computer. The warrant *did* specifically indicate it was searching for items related to child pornography, so the executing officers were not free to go through Umgelder's property without limits. This is sufficiently particular to withstand constitutional challenge. Accordingly, the evidence obtained from the search and seizure of Umgelder's computer is not subject to suppression.

### III.     Fourth Amendment:  Probable Cause

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. Const. amend. IV.

In *Illinois v. Gates*, 462 U.S. 213, 236 (1983), the Supreme Court reaffirmed the traditional standard for review of an issuing judge's probable cause determination: "so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." (citation omitted). The *Gates* Court went on to say:

> [W]e reaffirm the totality of the circumstances analysis that traditionally has informed probable cause determinations. . . . The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

9

*Id.* at 239-40 (citations omitted).

A court should give great deference to a magistrate judge's decision and should affirm a determination of probable cause unless the magistrate judge was clearly in error. *Gates*, 462 U.S. at 236; *United States v. Walker*, 237 F.3d 845, 849 (7th Cir. 2001). Accordingly, a court should resolve doubtful cases in favor of upholding the warrant. *United States v. Pless*, 982 F.2d 1118, 1124 (7th Cir. 1992).

In this case, the affidavit used to apply for the search warrant of Umgelder's residence clearly demonstrates that there was probable cause to believe that evidence of illegal child pornography possession and distribution was present in the apartment where Umgelder lived. That the affidavit identified the suspected offender as Timothy McSwain, Umgelder's roommate, and not Umgelder himself did not negate the probable cause to search the entire apartment for evidence of child pornography crimes. For this reason, the evidence seized in the search is not subject to suppression.

**IV.  Conclusion**

For the foregoing reasons, the Court **DENIES** the amended motion to suppress (Doc. 24). Pursuant to 18 U.S.C. § 3161(h)(1)(F) and (J), the Court finds that the period from when the defendant's amended motion to suppress was filed, July 7, 2007, up to and including today, is **EXCLUDABLE** under the Speedy Trial Act. The Court will notify the parties of dates for the final pretrial conference and trial.

**IT IS SO ORDERED.**
**DATED:  December 6, 2007**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**